IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BROTHERHOOD OF MAINTENANCE OF WAY EMPLOYES DIVISION OF THE INTERNATIONAL BROTHERHOOD OF TEAMSTERS,<br><br>    Petitioner,<br><br>v.<br><br>UNION PACIFIC RAILROAD COMPANY,<br><br>    Respondent. | Case No. 23 C 16579<br><br>Hon. LaShonda A. Hunt |

## MEMORANDUM OPINION AND ORDER

Petitioner Brotherhood of Maintenance of Way Employes Division of the International Brotherhood of Teamsters ("BMWED") brings this action under the Railway Labor Act ("RLA") to enforce an arbitration award issued by a Special Board of Adjustment ("Board"). The Board mostly found in favor of BMWED in concluding that the carrier, Respondent Union Pacific Railroad Company ("Union Pacific"), did not properly determine certain travel allowances under the parties' collective bargaining agreement. In response, Union Pacific paid specific agreed-upon claims but then declared it would not apply the Board's award to newly filed claims which it contended were not subject to the parties' arbitration. Disagreeing with that interpretation of the Board's award, BMWED filed the present lawsuit seeking to enforce the award prospectively. Currently before the Court are the parties' cross-motions for summary judgment. (Dkts. 28, 31). For the reasons explained below, the Court grants Union Pacific's motion, denies BMWED's motion, and dismisses this case for lack of jurisdiction.

**BACKGROUND**[1]

BMWED is a national labor organization that is the duly authorized bargaining representative under the RLA for people employed by Union Pacific. (Resp't Resp. SOF ¶ 1, Dkt. 35) (hereinafter, "RRSOF"). BMWED is a "representative" and Union Pacific is a "carrier" as both are defined by the RLA, 45 U.S.C. § 151. (*Id.* ¶¶ 1-2). On February 9, 2023, representatives from BMWED and Union Pacific met in Omaha, Nebraska to discuss issues related, in part, to travel allowances. (*Id.* ¶ 9). There, a BMWED representative proposed that the parties engage in expedited arbitration to resolve specific questions about travel allowances due to a disagreement over how the parties' contract should be interpreted. (*Id.* ¶ 10). The parties agreed to submit their dispute to the Board. (*Id.* ¶ 11).

Later, they memorialized their plan in an agreement ("SBA Agreement"), which governed a potential arbitration in front of the Board. (*Id.* ¶ 12; SBA Agreement ¶ 1, at 14, Dkt. 1-1).[2] The SBA Agreement presented eight total questions to the Board in an Attachment "A" for resolution. (RRSOF ¶¶ 13-14). The governing document also included an Attachment "B," as described in Paragraph 9, which stated that:

> In lieu of filing claims, [BMWED] shall update and share a copy of the excel sheet listed as Attachment "B" with the Carrier. Claimants shall be added to Attachment "B" within the timelines prescribed in the Agreement for progressing claims, unless the parties agree to a time limit extension. Any updates to Attachment "B" will be provided by [BMWED]'s representative(s) via email to [Union Pacific]. Attachment "B" may be amended **until the award is executed**. After the Award is executed, new disputes will be

---

[1] The facts are taken from the parties' Local Rule 56.1 Statements and are undisputed, unless otherwise noted.

[2] Page numbers in citations refer to the "PageID" in the CM/ECF header, not "Page __ of __" in the CM/ECF header or any page number appearing in the footer.

> submitted to [Union Pacific] in accordance with the Appropriate CBA.

(*Id.* ¶ 20) (emphasis added). The parties subsequently submitted their respective positions on the eight questions to the Board for consideration. (*Id.* ¶ 30).

Following oral argument and a review of the submissions, the Board issued its award on October 27, 2023 ("Award"), (*Id.* ¶ 33), answering seven of the eight questions in favor of BMWED. (*Id.* ¶ 34; Award, at 28-30, Dkt. 1-2). That same day, Union Pacific submitted a dissent, where it stated that it "give[s] notice that [Union Pacific] does not intend to acquiesce to the Board's decision in future disputes," other than the disputes related to the claims in Attachment "B." (RRSOF ¶ 35; Dissent, at 31-34, Dkt. 1-3). BMWED responded, arguing that Union Pacific's stance is "bad faith," and that the Award should apply going forward, not just to the individual claims submitted in Attachment "B." (RRSOF ¶ 36). Neither side disputes that Union Pacific has upheld its obligations under the Award as they relate to the claimants in Attachment "B." (Pet'r Resp. Resp't SOAF ¶ 1, Dkt. 39). Rather, the present dispute concerns the future application of the Award to other claimants. (*See* Compl. ¶¶ 31-39, Dkt. 1).

After exchanging correspondence related to the prospective nature of the dispute for a little over a month, BMWED filed the present lawsuit in December 2023. (*See* RRSOF ¶¶ 37-41; Compl., Dkt. 1). Although Union Pacific moved to dismiss under Rule 12(b)(1) (Dkt. 10), the Court declined to do so, citing the need for a fuller record, and directed the parties to file summary judgment materials instead (Dkt. 22). Union Pacific now renews its argument that BMWED's petition is moot because it paid all claims submitted in Attachment "B," and the Court lacks jurisdiction to interpret the SBA Agreement. (Resp't Mem. Supp. MSJ, at 600-601, Dkt. 30). BMWED contends, on the other hand, that the SBA Agreement and resulting Award were meant to apply prospectively and to "be construed as a 'lead case' even if the parties die [sic] use that

3

specific phrase." (Pet'r Mem. Supp. MSJ, at 623, Dkt. 32). These motions are fully briefed and ripe for resolution.

## **LEGAL STANDARD**

Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In determining whether a genuine issue of material fact exists, a court must view the evidence and draw all reasonable inferences in favor of the party opposing the motion. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Omnicare Inc. v. UnitedHealth Group, Inc.*, 629 F.3d 697, 704 (7th Cir. 2011); *Bennington v. Caterpillar Inc.*, 275 F.3d 654, 658 (7th Cir. 2001).

When a case comes before a court on cross-motions for summary judgment, it must look to the burden of proof that each party would bear on an issue at trial and then require that party to go beyond the pleadings and establish through competent evidence a genuine issue of material fact. *See Santaella v. Metropolitan Life Ins. Co.*, 123 F.3d 456, 461 (7th Cir. 1997) (citing *Celotex*, 477 U.S. at 324). However, on summary judgment courts will limit their analysis of the facts to the evidence that is supported by the parties' Local Rule 56.1 statements properly before the Court. *See F.T.C. v. Bay Area Business Council, Inc.*, 423 F.3d 627, 634 (7th Cir. 2005); *Bordelon v. Chicago Sch. Reform Bd. of Tr.*, 233 F.3d 524, 529 (7th Cir. 2000). When a proposed statement of fact is supported by the record and not adequately controverted by the opposing party, the Court will accept that statement as true. *See Alberio v. City of Kankakee*, 246 F.3d 927, 933 (7th Cir. 2001).

**DISCUSSION**

The RLA governs labor disputes between employees, employers, and labor unions. 45 U.S.C. § 151. "In case a dispute arises involving an interpretation of the award, the division of the board upon request of either party shall interpret the award in light of the dispute." 45 U.S.C. § 153 First(m). In furtherance of the statutory goals of avoiding disruption in labor and ensuring that industry experts interpret and enforce collective bargaining agreements, the RLA reflects a "strong preference for arbitration." *BLET GCA UP v. Union Pac. R.R. Co.*, 988 F.3d 409, 413 (7th Cir. 2021); *see also Consolidated Rail Corp. v. Ry. Labor Executives' Ass'n*, 491 U.S. 299, 310 (1989) (hereinafter, "*Conrail*") ("Referring arbitrable matters to the Board will help to . . . assur[e] that collective-bargaining contracts are enforced by arbitrators who are experts in the common law of [the] particular industry." (internal quotations omitted)). When a party does not request that the Board interpret its award if a disagreement arises and instead goes to the courts, the disputes are divided into two classes: "major" and "minor." 45 U.S.C. § 152 ¶¶ Sixth, Seventh; *Elgin J. & E. Ry. v. Burley*, 325 U.S. 711, 722-723, (1945) (articulating the "two classes of controversy" of railway labor disputes); *Conrail*, 491 U.S. at 302 (distinguishing between "major" and "minor" disputes).

In a major dispute, a union and a railway seek to change the terms of their collective bargaining agreements. 45 U.S.C. § 152 ¶ Seventh; *Conrail*, 491 U.S. at 302 ("[M]ajor disputes seek to create contractual rights . . . ."). To do so, the parties must enter into an extensive negotiation and mediation process. 45 U.S.C. §§ 155, 156; *Conrail*, 491 U.S. at 302 ("In the event of a major dispute, the RLA requires the parties to undergo a lengthy process of bargaining and mediation."). Minor disputes, on the other hand, are those "arising out of grievances or out of the

interpretation or application of agreements concerning rates of pay, rules, or working conditions." 45 U.S.C. § 152 ¶ Sixth; *Conrail*, 491 U.S. at 303.

"When minor disputes occur, the parties must handle the dispute in 'the usual manner' and may petition for arbitration before a RLA Adjustment Board." *Bhd. of Maint. of Way Emples. Div./IBT v. Norfolk S. Ry.*, 745 F.3d 808, 810-811 (7th Cir. 2014) (quoting 45 U.S.C. § 153 ¶ First(i)); *see also Ryan v. Union Pac. R.R. Co.*, 286 F.3d 456, 460 (7th Cir. 2002) (the usual manner of the parties was prescribed by the terms of their collective bargaining agreement). The burden to persuade a court that a dispute is "minor" (*i.e.*, subject to arbitration) is "relatively light." *Conrail*, 491 U.S. at 307. "So long as the employer's argument is neither obviously insubstantial or frivolous, nor made in bad faith, the court lacks jurisdiction to do anything but dismiss the case and allow arbitration to go forward." *Int'l Bhd. of Teamsters v. Republic Airways Inc.*, 127 F.4th 688, 694 (7th Cir. 2025) (quotes omitted). "Plain and simple, in making the choice between major and minor, there is a large thumb on the scale in favor of minor, and hence arbitration." *Id.* (quotes omitted). And Adjustment Board awards are final and binding upon both parties, 45 U.S.C. § 153 ¶ First(m), and subject to "one of the most deferential standards of judicial review in all of federal law." *Bhd. of Locomotive Eng'rs & Trainmen v. Union Pac. R.R. Co.*, 719 F.3d 801, 803 (7th Cir. 2013).

The governing SBA Agreement gave the Board "jurisdiction provided for under Section 3, Second of the [RLA] and this Agreement to decide the disputed questions identified in Attachment 'A.'" (SBA Agreement ¶ 1, at 14). The SBA Agreement required BMWED to "update and share a copy of the excel sheet listed as Attachment 'B,'" which is a list of particular claimants that will be affected by the Award, and allowed BMWED to amend Attachment "B" "until the Award is executed." (*Id.* ¶ 9, at 15). It also provided that "[a]fter the Award is executed, new disputes will

6

be submitted to the Carrier [(*i.e.* Union Pacific)] in accordance with the appropriate CBA." (*Id.*). Finally, the SBA Agreement stated that the Award was to be "final and binding" subject to the RLA, and that "[a]n award rendered in favor of [BMWED] shall direct [Union Pacific] to comply therewith on or before the date named." (*Id.* ¶ 10, at 15). After the conclusion of proceedings before it, the Board issued an Award finding for BMWED on seven of the eight questions presented in Attachment "A." (Award, at 28-30).

Here, neither side asked the Board to interpret its award. Rather, Union Pacific argues that the Court lacks jurisdiction because this case is a minor dispute that involves differing interpretations of the SBA Agreement. (Resp't Reply, at 1206-1207, Dkt. 41). Under Union Pacific's interpretation, the Award is limited to those claimants listed on Attachment "B" pursuant to the SBA Agreement. (*Id.* at 1206). BMWED asks the Court to enforce the award system-wide, on the theory that this dispute is an "enforcement action" that requires no interpretation. (*See* Pet'r Reply, at 1198, Dkt. 40). Put differently, BMWED attempts to side-step the dichotomy between "major" and "minor" disputes by declaring this dispute as neither. (*See* Pet. Reply, at 1198, Dkt. 40) (stating that "BMWED has not alleged that . . . the dispute before the Court is a 'major dispute,'" but not declaring that the dispute is "minor").

Despite BMWED's attempted maneuver, the Court finds that this is indeed a minor dispute concerning a question of contract interpretation—namely, the SBA Agreement—that is for an arbitrator to resolve. There is no dispute concerning whether the SBA Agreement expressly states it will apply to future claims—it does not. (*See* Pet'r Reply, at 1200) ("While Paragraph 9 states how claims and new disputes will be dealt with procedurally, it does not say anything about the prospective nature of the answers to the eight questions and whether the Board's Award will apply to future claims or disputes."); (*See* Resp't Reply, at 1206) ("The fact that Union Pacific agreed to

7

forgo the normal claims process and present a group of claims on a spreadsheet does not establish that the Board's Award is required to apply to future claims."). Union Pacific argues that because Paragraph 9 of the SBA Agreement states that the parties agreed to allow BMWED to submit a list of claims on Attachment "B" "[i]n lieu of filing claims," and that after the Award is executed "new disputes will be submitted to [Union Pacific] in accordance with the Appropriate CBA," the SBA Agreement establishes that the Award has no preclusive effect. (Resp't Reply, at 1205-1207).

Based on the above, the Court finds that Union Pacific's interpretation is supported by the language of the parties' SBA Agreement. Accordingly, Union Pacific has met its light burden of establishing that its interpretation is "neither obviously insubstantial or frivolous, nor made in bad faith," and therefore, "the court lacks jurisdiction to do anything but dismiss the case and allow arbitration to go forward." *Republic Airways Inc.*, 127 F.4th at 694 (quotes omitted).

This conclusion is also supported by Seventh Circuit precedent. It is "well-established that 'the preclusive effect of the first arbitrator's decision is an issue for a later arbitrator to consider.'" *Indep. Lift Truck Builders Union v. NACCO Materials Handling Grp., Inc.*, 202 F.3d 965, 968 (7th Cir. 2000) (quoting *Bhd. of Maint. of Way Emps. v. Burlington N. R.R. Co.*, 24 F.3d 937, 940 (7th Cir. 1994)); *see also Production Employees' Local 504 v. Roadmaster Corp.*, 916 F.2d 1161, 1162 (7th Cir. 1990) ("Whether more than one arbitrator can take a crack at interpreting the contract is itself a question of contractual interpretation."). For example, in *Burlington*, the Seventh Circuit reversed the district court's decision to grant an injunction and found that the district court erred when it found that an arbitration award had preclusive effect. *See* 24 F.3d at 940-941 ("[T]he very fact that the injunction gives the district judge an active role in adjusting the parties' future relations demonstrates how problematic the order is under the RLA."). In that case, the Adjustment Board found that an automated railway lubrication system supervised and operated by a non-union

8

employee on a stretch of track between Missouri and Arkansas, violated the parties' collective bargaining agreement "because it is the same kind of task the union's members had performed." *Id.* at 938. When the railroad company declined to apply the award to other stretches of track in the same system, the union sued in federal court without raising the issue with the Board. *Id.*

There, the union asked the district court to "enforce" the award under the theory that no interpretation of the award is necessary. *Id.* The district court granted the union's requested relief and issued an injunction broadening the award by enforcing it system-wide rather than only on the track between Missouri and Arkansas. *Id.* at 939. However, the Seventh Circuit reversed, finding that the union's theory of the case was improper because "[b]y contending that the court need not interpret the award, the [union] sought to avoid the principle that disagreement about the meaning of an award amounts to disagreement about the meaning of the underlying collective bargaining agreement." *Id.* at 938. The Seventh Circuit held that while the parties may establish that the first award may control future disputes, "whether they have so provided is a question about the meaning of their collective bargaining agreement—a question that under the [RLA] must be presented to an Adjustment Board." *Id.* at 940.

This case is no different. Like the plaintiff in *Burlington*, BMWED asks the Court to enforce an award by finding that it has a preclusive effect when the parties' SBA Agreement does not express that intent. The Seventh Circuit instructs that such a finding equates to an interpretation as to the meaning of the parties' collective bargaining agreement, which is a question that the RLA requires to be presented to the Board, not this Court.

BMWED argues that *Burlington* does not prohibit its suit because the Seventh Circuit noted the "preclusive effect of a 'lead case,' which is more analogous to the SBA's Agreement and Award here." (Pet'r Opp'n, at 1180, Dkt. 37). Specifically, the Seventh Circuit stated in what is

9

arguably dicta,[3] which the Court "is free to reject," *Crawley*, 837 F.2d at 292, that "[w]hen multiple grievances pending at the same time depend on resolution of a single issue, the parties often designate one of the grievances as a 'lead case' whose resolution controls the others." *Burlington*, 24 F.3d at 941. Ultimately, the court found that because the parties did not designate that the award was to be a "lead case," they were required to "try again" in front of the Board "with better arguments and evidence." *Id.*

In short, the parties did not expressly deem this dispute a "lead case" or the like. Union Pacific's interpretation—that the Award applies only to the claimants in Attachment "B" under the SBA Agreement—is thus neither frivolous nor taken in bad faith. While BMWED may be correct that as a practical matter, the intent was for the Award to have a preclusive effect, that language does not exist in the SBA Agreement. As such, the parties' dispute is minor and subject to arbitration. Because the Court lacks jurisdiction to resolve this matter, it must be dismissed.

## CONCLUSION

For all the foregoing reasons, Respondent's motion for summary judgment (Dkt. 28) is granted, and Petitioner's motion for summary judgment (Dkt. 31) is denied. This case is dismissed without prejudice.

**DATED**: December 11, 2025        **ENTERED**:

LaShonda A. Hunt
LaShonda A. Hunt
United States District Judge

---

[3] *See United States v. Crawley*, 837 F.2d 291, 292 (7th Cir. 1988) (defining dictum as "a statement in a judicial opinion that could have been deleted without seriously impairing the analytical foundations of the holding—that, being peripheral, may not have received the full and careful consideration of the court that uttered it").